UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ROBERT SHEAFFER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 19 C 3899 |
| GLENDALE NISSAN, INC., | ) ) | Judge Sara L. Ellis |
| Defendant. | ) ) | |

## OPINION AND ORDER

Following his termination from Glendale Nissan, Inc., Plaintiff Robert Sheaffer filed this action claiming that Glendale Nissan: violated the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et seq.* (Count I); improperly discharged Sheaffer in retaliation for reporting instances of fraud, violating Illinois common law (Count II) and 42 U.S.C. § 2000-e3(a) (Count IV); subjected Sheaffer to a hostile work environment in violation of 42 U.S.C. § 2000-e2 (Count III); violated the Illinois Gender Violence Act ("IGVA"), 740 Ill. Comp. Stat. 82/1 *et seq.* (Count V); discriminated against Sheaffer based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count VI); and violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* (Count VII). Glendale Nissan now moves to dismiss Sheaffer's IGVA and IWPCA claims (Counts V and VII). Because Sheaffer does not adequately state a claim under the IGVA, the Court dismisses Count V without prejudice. But because Sheaffer does adequately state a claim under the IWPCA, the Court denies in part Glendale Nissan's motion to dismiss.

# BACKGROUND[1]

Sheaffer began working for Glendale Nissan as its Director of Finance in April 2016. When he joined, each financing deal that Glendale Nissan made was under a detailed review because of past questionable practices with its car loan documents. As a result, Sheaffer's responsibilities included rebuilding a rapport with banks and ensuring that Glendale Nissan eliminated all questionable practices.

Shortly after he began working at Glendale Nissan, Sheaffer learned that many of the questionable practices were still ongoing, including that the Finance Manager was calling in potential car sales to banks to obtain financing on a customers' behalf, but was knowingly giving the bank false information about the amount needed to finance the sale. Sheaffer demanded that the Finance Manager cease the fraud and reported the fraud to the Acting General Manager. Sheaffer also learned that new and used car sales employees were regularly engaged in a practice called "power booking." "Power booking" is the practice of falsely and fraudulently telling financing banks that the car at issue had added features, such as a sunroof or navigation system, when the employee knew that the car did not possess those features. By implementing this practice, employees could obtain higher financing for the car and increase the revenue gained by the sale at the expense of the financing bank. Sheaffer continually reported this fraud to the Acting General Manager.

On March 10, 2018, the Used Car Manager presented Sheaffer with a contract for him to submit for financing. However, when Sheaffer reviewed the contract and compared it against other documents, he determined that the customer's listed social security number did not match the customer's date of birth and was likely fraudulent. When Sheaffer reported the fraud to the

---

[1] The facts in the background section are taken from Sheaffer's complaint and are presumed true for the purpose of resolving Glendale Nissan's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

General Sales Manager, the General Sales Manager asked him to change the customer's date of birth to match the listed social security number and submit it to the bank for financing. After Sheaffer refused to participate, the General Sales Manager created a fake social security number, called a bank with which Sheaffer had a close relationship, and used Sheaffer's name to complete the financing deal using the false and fraudulent information. Sheaffer reported this to the Acting General Manager. Three days later, on March 13, 2018, Glendale Nissan terminated Sheaffer.

While he worked at Glendale Nissan, Sheaffer regularly saw explicit drawings and cartoons that the General Sales Manager had posted around the office. The General Sales Manager also told Sheaffer that he would perform sexual acts on Sheaffer if he closed a deal or got the Manager a good rate on financing for a customer. The Director of Used Cars also regularly made explicit sexual comments to Sheaffer. Similarly, one of Glendale Nissan's employees regularly asked if he could perform sexual acts on Sheaffer. This employee grabbed Sheaffer in a sexual way by sneaking up behind him, grabbing and squeezing him so hard that Sheaffer suffered a rib injury. In December 2017, Sheaffer complained to the Acting General Manager about these incidents. Rather than investigate or correct incidents of this nature, the Acting General Manager told Sheaffer to "man the **** up," to have "thicker skin," and that they were only joking. Doc. 1 ¶ 39.

While Sheaffer worked at Glendale Nissan, he received comments about his age. The Operations Manager regularly called Sheaffer an "old man" and a "dinosaur." *Id*. ¶ 47. One of Glendale Nissan's employees regularly asked Sheaffer "what it was like to know Moses," if he understood "what a computer is," and "why don't you retire, old man." *Id.* ¶ 48. Several other employees informed Sheaffer that the management team did not like him because of his age and

he personally witnessed a manager state that he wanted to "get rid of all the old timers." *Id*. ¶ 50. Finally, when Sheaffer raised a pay disparity issue between what Glendale Nissan agreed to pay him during the hiring process and his actual payment, the former General Manager informed Sheaffer that his pay was lower "because of his age," and because he "was not young blood." *Id*. ¶ 51. After Glendale Nissan terminated Sheaffer, it replaced him with a man in his mid-30's. Sheaffer filed a Charge of Discrimination with the EEOC on May 24, 2018 regarding the age discrimination, sexual harassment, hostile work environment, and retaliation he experienced. On March 22, 2019, the EEOC issued Sheaffer a "Notice of Right to Sue;" after which, Sheaffer filed the present action.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. IGVA Claim (Count V)

The IGVA states, in pertinent part:

> Any person who has been subjected to gender-related violence . . . may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 Ill. Comp. Stat. 82/10. Section 5 of the IGVA defines "gender-related violence" to include: "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex" and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." 740 Ill. Comp. Stat. 82/5.

Glendale Nissan argues that Sheaffer's allegations, even if true, are insufficient to state a claim under the IGVA because he merely alleges that Glendale Nissan "knew or should have known of the gender-related violence and failed to take reasonable corrective action." Doc. 1 ¶ 87. Sheaffer misses this point and argues instead that corporate liability exists under the IGVA. The Court acknowledges that it is an open question whether corporations can be held liable under the IGVA and that Sheaffer is not precluded from properly bringing a claim against Glendale Nissan under the IGVA. *See Gasic v. Marquette Mgmt., Inc.*, --- N.E.3d. ----, 2019 IL App (3d) 170756, at *3 (2019) ("[I]t would be hypothetically possible to sue a legal entity for acting personally under the [IGVA], if some fictional plaintiff were to file a perfectly-worded complaint."). The Court will consider the issue of corporate liability under the IGVA when it is properly at issue. However, the issue presently raised is that "a corporation's knowledge plus inaction doesn't state a claim for personally encouraging or assisting under the IGVA."

5

*Brownlee v. Catholic Charities of Archdiocese of Chicago*, No. 16-CV-00665, 2018 WL 1519155 at *11 (N.D. Ill. Mar. 28, 2018) (citing *Doe v. Psi Upsilon Int'l*, 963 N.E.2d 327, 331, 357 Ill. Dec. 374 (Ill. App. Ct. 2011), and *Watkins v. Steiner*, Nos. 5-11-0421, 5-11-0422, 5-11-0423, 5-11-0424, 5-11-0442, 5-11-0443, 2013 WL 166737, at *1, 4 (Ill. App. Ct. Jan. 14, 2013)). Here, Sheaffer merely alleges that Glendale Nissan had knowledge that its employee had committed an act of gender-related violence against him and had failed to take a reasonable corrective action, not that Glendale Nissan had personally assisted in or personally encouraged the gender-related violence, as required by the statute. The Court therefore dismisses Count V of Sheaffer's claim without prejudice.

## II.     IWPCA Claim (Count VII)

The IWPCA requires employers "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 Ill. Comp. Stat. 115/3. Wages are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 Ill. Comp. Stat. 115/2. Therefore, for a person to state a claim under the IWPCA, "he or she must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1058, 356 Ill. App. 3d 1060, 293 Ill. Dec. 170 (2005).

Here, Sheaffer alleges that he raised a pay disparity between what Glendale Nissan agreed to pay him during the hiring process and his actual payment. Doc. 1 ¶¶ 51, 102. Glendale Nissan argues that he "fails to allege: (1) what Defendant agreed to pay him; (2) whether this agreement was memorialized in writing or was an oral agreement; (3) what Defendant did in fact pay him; or (4) what Plaintiff is allegedly owed." Doc. 15 at 4–5.

6

However, Glendale Nissan does not direct the Court's attention to any case or statute that requires Sheaffer to allege these things. Sheaffer need only allege that he and Glendale Nissan had an agreement regarding his wages and that his actual wages were less than the agreed amount and therefore he is owed wages. *Landers-Scelfo*, 827 N.E.2d at 1058; *see Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660–62 (N.D. Ill. 2012) (finding plaintiffs had adequately pleaded a claim under the IWPCA where plaintiffs identified that Comcast failed to pay overtime wages they were owed pursuant to the agreement formed by the employee handbook). Sheaffer alleges that he and Glendale Nissan came to an agreement as to how much Glendale Nissan would pay him during the hiring process. Doc. 1 ¶ 51; *see Wharton*, 912 F. Supp. 2d at 659 ("Illinois courts have held that an employment agreement need not be a formally negotiated contract, and that parties may enter into an agreement without the formalities and accompanying legal protections of a contract."); *Landers-Scelfo*, 827 N.E.2d at 1058–59 ("[A]n employment agreement can be entirely implicit" and "employers and employees can manifest their assent to conditions of employment by conduct alone."). He also alleges that Glendale Nissan paid him less than the agreed-upon amount and therefore Glendale Nissan owes him wages. Doc. 1 ¶ 51. Sheaffer has therefore sufficiently stated a claim under the IWPCA. *Landers-Scelfo*, 827 N.E.2d at 1058. The Court therefore denies Glendale Nissan's motion to dismiss Count VII.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant Glendale Nissan's motion to dismiss [15]. The Court dismisses Count V of Sheaffer's complaint without prejudice.

Dated: January 6, 2020

_____
SARA L. ELLIS
United States District Judge

7