UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT SHEAFFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 3899 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| GLENDALE NISSAN, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Following his termination from Defendant Glendale Nissan, Inc., Plaintiff Robert Sheaffer, the former director of Glendale Nissan's finance department, filed this lawsuit against Glendale Nissan. After discovery, he has the following remaining claims against Glendale Nissan: violations of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et seq*. (Count I); Illinois common law retaliatory discharge (Count II); and hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (Counts III and IV). Glendale Nissan has now moved for summary judgment on Sheaffer's hostile work environment claim (Count III). With respect to that claim, Sheaffer alleges that two of Glendale Nissan's male employees, General Sales Manager Mario Zubek and Sales Manager Pete Binner, sexually harassed him in 2018. Because no reasonable juror could conclude that the alleged sexual harassment Sheaffer experienced was severe or pervasive, Sheaffer's hostile work environment claim cannot survive summary judgment.

# BACKGROUND[1]

## I. Sheaffer's Tenure at Glendale Nissan

Sheaffer began working at Glendale Nissan, a licensed motor vehicle dealer located in Glendale Heights, Illinois, in April 2016 as a finance director. Sheaffer's responsibilities included supervising employees in the finance department to ensure that all finance deals for vehicles went through the proper process, as well as making recommendations with respect to the hiring and firing of employees in that department. During his employment, Sheaffer reported to General Manager Matt Douvikas and Director of Operations Keith Narozny. He also consistently worked with Zubek and Binner. From January 2018 until Sheaffer's termination in March 2018, Zubek ultimately had supervisory authority over Sheaffer.

## II. Alleged Sexual Harassment

Sheaffer identifies as heterosexual. Many Glendale Nissan employees had met his girlfriend, who frequently visited the dealership. Both Zubek and Binner were married to women during Sheaffer's tenure at Glendale Nissan. But Sheaffer testified that he had "suspicions" that Zubek may have had a romantic relationship with another male employee of the dealership because Zubek and the other employee "talked about sleepovers," "joined a paintball club," "started racing go karts," and "went out and bought bicycles and uniforms together." Doc. 76-1 at 145:16, 146:5.

Beginning in January 2018 and ending in March 2018, Sheaffer recalled Zubek making lewd comments, saying that if Sheaffer did him a work-related favor, he would give Sheaffer a blow job. These comments, Sheaffer testified, occurred in his office and also at a desk in the showroom where the sales managers sat called the sales tower. At no point did Sheaffer take

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts. The Court takes all facts in the light most favorable to Sheaffer, the non-movant.

these comments as a joke. Zubek, however, denied making any comments to Sheaffer about blow jobs and testified that, hypothetically, if he had made such comments, Glendale Nissan could have terminated him for violating its sexual harassment policy.

Further, Sheaffer testified that, in either January or February 2018, Zubek showed him a notebook with drawings of penises, referencing a show on Netflix in which a character kept a similar notebook. Sheaffer expressed his disgust with the notebook, to which Zubek laughed. Zubek testified that he never showed Sheaffer, or anyone else at Glendale Nissan, an image or drawing of a penis.

Also in January 2018, Binner put a picture of two men having sex on Sheaffer's office computer. When Sheaffer confronted Binner, Binner laughed and said "it's kind of funny, come on, lighten up, can't you take a joke?" *Id*. at 132:21–22. Only a day later, while discussing a deal in Sheaffer's office, Binner commented that he would hold Sheaffer down in the service bay and perform anal sex on him. When Sheaffer expressed his concern over the comment to Binner, Binner again laughed.

Sheaffer testified that Zubek and Binner's conduct made him uncomfortable, particularly because a priest had molested him as a child. Sheaffer complained about Zubek's sexual comments to Narozny, Dave Martin, Dan Gutierrez, and an office manager at Glendale Nissan. He also testified that he complained to Zubek and Narozny about Binner's conduct, with Narozny responding that Sheaffer needed to "lighten up" because "it was a joke." *Id.* at 193:4–5. Zubek denied knowledge of Sheaffer's complaints about Binner.

Sheaffer further testified that "[e]verything was a joke at [Glendale Nissan]" and that "[n]o one took anything seriously, no matter what it was." *Id.* at 151:7–8, 12–16. Sheaffer acknowledged that Zubek and Binner joked around with most employees at Glendale Nissan and

3

that Zubek particularly made fun of certain, newer salespersons. Further, Sheaffer testified that he does not believe Zubek or Binner had a general hostility toward men in the workplace or that Binner or Zubek harassed him because of such a general hostility toward men. He also testified that he does not believe that Zubek and Binner acted out of any sexual attraction toward him. Rather, Sheaffer acknowledged that he does not know Zubek and Binner's motivation for their conduct towards him. Although Sheaffer testified that he could do his job despite the alleged harassment and that it did not affect his ability to complete his tasks, it still caused him to have difficulty sleeping and suffer from depression and frustration.

### III. Gender Demographics at Glendale Nissan

Sheaffer testified that, during his employment with Glendale Nissan, most of the employees were men. Between January and March 2018, seventy-seven of the ninety-six employees, just over eighty percent, were male. During the same time, 100% of the employees in the sales and finance departments were male, as were all of the employees working at the dealership's sales tower.

Some females did work at Glendale Nissan, and Sheaffer recalls seeing Zubek and Binner interact regularly with the female employees at the dealership. But Sheaffer did not witness Zubek and Binner make any sexually offensive remarks or gestures toward the female employees, nor did he see them physically touch these female employees in a sexual manner.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to

interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This prohibition encompasses the creation of a hostile work environment that is severe or pervasive enough to affect the terms and conditions of employment. *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014). To establish a claim for hostile work environment based on sexual harassment, "(1) the work environment must have been both subjectively and objectively offensive;

5

(2) [Sheaffer's] gender must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Id*. Glendale Nissan argues that Sheaffer's hostile work environment claim fails as a matter of law because Sheaffer failed to produce any evidence that the alleged harassment occurred because of his gender or that the conduct was severe or pervasive. Because Glendale Nissan's severe or pervasive argument is dispositive, the Court will only address that argument.

Sexual harassment is only actionable when it is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir. 2000) (alteration in original) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To determine whether the alleged conduct meets this requirement, the Court considers a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "In making this determination [the Court] look[s] to the totality of the circumstance[s] and ask[s] whether everything together constitutes a hostile or abusive environment." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018).

Here, Sheaffer complains of sex-based comments and lewd drawings that took place over a short, two-and-a-half-month period. Specifically, he testified that Zubek offered him oral sex a couple times a week beginning in January 2018 and shared his apparent obsession with penises by showing Shaeffer some drawings of them on one occasion. And Binner put a photo of two men having anal sex on Sheaffer's computer and later told Sheaffer that he would hold him down

6

and perform anal sex on him. Sheaffer acknowledges that the alleged harassment only began in January 2018 and thus did not occur consistently throughout his employment at Glendale Nissan.

While Sheaffer need not prove that the conduct was both severe *and* pervasive, typically, "it is a combination of severity and frequency that reaches the level of actionable harassment." *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006). "A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995). Indeed, the "sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly commonplace in some employment settings and 'do not amount to actionable harassment.'" *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999) (citation omitted); *see Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) ("'[O]ccasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." (quoting *Baskerville*, 50 F.3d at 430)). On the other hand, threatening behavior "cannot easily be explained away as merely 'rude or childish behavior.'" *Frazier v. Delco Elecs. Corp.*, 263 F.3d 663, 668 (7th Cir. 2001) ("A jury might find that Spears's *persistent*, crazy, hostile behavior toward Frazier after his threat to kill her was sufficiently ominous to make the workplace intolerable even to a person of average steadfastness." (emphasis added)); *see also EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018) ("A reasonable juror could conclude that being hounded for over a year by a customer despite intervention by management, involvement of the police, and knowledge that he was scaring her would be pervasively intimidating or frightening to a person 'of average steadfastness.'").

But here, the record does not indicate Zubek or Binner ever threatened Sheaffer and instead contains a relatively small number of instances of non-severe misconduct, namely juvenile teasing, over a short period of time. Such conduct does not reach the high bar required by the Seventh Circuit for actionable harassment. *See Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 862 (7th Cir. 2011) ("While both inappropriate and condescending, Bielecki referring to Overly as "cutie" 5 to 10 times over the course of two months is not sufficiently severe or pervasive to create a hostile work environment"); *see also Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) ("[T]he handful of comments of a sexual nature that Ronay made to Ms. Moser, apparently in the context of headless jokes, as opposed to serious or threatening comments, simply does not rise to the level of harassment our court has held actionable."); *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (harasser's actions in asking what color bra the plaintiff was wearing, grabbing her top, and requesting to "make a house call" when she called in sick did not amount to severe or pervasive conduct); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998) (colleague did not severely or pervasively harass the plaintiff by making both sexual comments and touching her arm or buttocks on four occasions).

Additionally, the record does not allow for the inference that Binner or Zubek's alleged harassment interfered with Sheaffer's work. *See Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999) (conduct "must be so severe or pervasive as to alter the terms or conditions of the employment relationship"). "To determine whether an employer's harassment unreasonably interfered with an employee's work, courts engage in an objective inquiry that evaluates the circumstances of the harassment and its impact on the plaintiff's work performance." *Frey v. Hotel Coleman*, 141 F. Supp. 3d 873, 881 (N.D. Ill. 2015). The Court need not engage in such

an inquiry because Sheaffer's own testimony belies any suggestion that the harassment interfered with his work performance, as he explicitly acknowledged that Zubek and Binner's actions did not affect his ability to complete his work-related tasks or otherwise interfere with his employment relationship. *See Kawczynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1087 (N.D. Ill. 2017) (relatively pervasive name calling that hurt plaintiff's feelings and affected him emotionally did not amount to a hostile work environment where the plaintiff "repeatedly and unequivocally stated" that the name calling did not interfere with his work). Therefore, while the Court does not condone this type workplace behavior and finds it offensive and inappropriate in a workplace setting, the facts here do not sufficiently meet the high bar necessary to allow Sheaffer's claim of sexual harassment to go to a jury, requiring the Court to enter judgment for Glendale Nissan on this claim. *See Walton v. Van Ru Credit Corp.*, No. 10-344, 2011 WL 6016232, at *7 (N.D. Ill. Dec. 2, 2011) ("We will not find a hostile work environment for mere offensive conduct that is isolated, and is not physically threatening or humiliating.").

## CONCLUSION

For the foregoing reasons, the Court grants Glendale Nissan's motion for partial summary judgment [75]. The Court enters judgment for Glendale Nissan on Sheaffer's hostile work environment claim (Count III).

Dated: October 20, 2021

SARA L. ELLIS
United States District Judge